## (2.) Plaintiff Information

| Ryan | K | Taylor |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prisoner ID # 20301-035

Federal Correctional Institution Cumberland -CMV-

P.O. Box 1000, Cumberland, MD. 21501

## (3.) Prisoner Status

Plaintiff Ryan Taylor is a convicted and sentenced Prisoner.

## (4.) Defendant Information

Defendant 1: Federal Bureau of Prisons (BOP)
320 First Street, N.W, Washington D.C. 20534

Defendant BOP is an agency of the United States that is responsible for the administration of Federal Prisons. The BOP maintains Physical custody of both Plaintiffs.

Defendant 1 is being sued in it's official capacity, and was acting under color of federal law at the time the claims in this complaint arose.

Defendant 2: Department of Justice
950 Pennsylvania Ave. N.W. Washington D.C. 20530

Defendant Department of Justice is the parent organization of the BoP and is liable under the doctrine of respondeat superior.

Defendant 2 is being sued in it's official capacity, and was acting under color of federal law at the time the claims in this complaint arose.

Defendant 3: William Marshall
           FBoP, 320 First Street, N.W. Washington D.C. 20534

Defendant William Marshall is the director of the BoP. At all relevent times, Marshall and his predecessors as directors have had senior supervisory and decision making authority over the operations of the BoP and the placement, transfer, and treatment of prisoners in the custody of the BoP.

Defendant 3 is being sued in his official capacity, and was acting under color of federal law at the time the claims in this complaint arose.

Defendant 4: Christopher Gomez
           FBoP, 302 Sentinel Drive, Annapolis Jct, MD., 20701

Defendant Gomez is the regional director of the BoP for the mid-Atlantic region. At all relevent times, Gomez and his predecessors as regional directors have had senior supervisory and decision making authority over the operations of the BoP prisons within their region.

Defendant 4 is being sued in his official capacity, and was acting under color of federal law at the time the claims —

in this complaint arose.

Defendant 5: Melissa J. Bayless
FBoP, 14601 Burbridge Rd. S.E,
Cumberland, MD. 21502

Defendant Bayless is the warden of FCI Cumberland. At all relevent times, Bayless and her predecessors as Warden have had senior supervisory and decision making authority over the policies, programs, and operations of FCI Cumberland.

Defendant 5 is being sued in her official capacity, and was acting under color of federal law at the time the claims in this complaint arose.

(5.) STATEMENT OF CLAIMS

Jurisdiction and Venue

1.) This court has subject matter jurisdiction over this pursuant to 28 U.S.C. §§ 1331, 1343 (a)(4), 2201, and 2202, and also pursuant to the Administrative Procedure Act, 5 U.S.C. §702.

2.) Venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (e), as a substantial part of the events or omissions giving rise to the claims herein occured in this district. Plaintiffs are also located in this district, and this is a civil action brought against officers and employees of the United States acting under color, or legal authority of the United States.

3.) This complaint is a proposed class action suit, brought by both named Plaintiff's, as well as the following named class members, all of whom are identically situated as the Plaintiffs, in that, they too are suffering from the exact same violations as the Plaintiff's. Therefore, it is in the intrest of this court logistically, to grant class certification to this suit in order to avoid the severe docketing issues that would occur as a result of the multiplicitous filings that are better suited to be handled in a class action manner.

4.) As to claims one and two, the only named Plaintiff is Robert M. Elliott, as he is the only person to have exhausted on these claims. The following names are the proposed class members as to claims 1 and 2. – see attached sworn affidavits from each member, EXHIBITS 1-8

– Ryan K. Taylor #20301-035, Federal Correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

– Matthew Hale #15177-424, Federal Correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

– George Yarbrough #76861-379, Federal Correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

– Mohammad Salameh #34338-054, Federal Correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

– Matthew Dowell #22131-041, Federal Correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland,

MD. 21501

- Reginald Falice #13754-058, Federal correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

- Approximately 150,000 BOP inmates, all of whom are identically situated as the above named members in this matter.

5.) As to claims three through six, the only named Plaintiff is Ryan K. Taylor, as he is the only person to have exhausted on these claims. The following names are the proposed class members as to claims 3-6 - see attached sworn affidavits from each member, Exhibits 9-17.-

- Robert M. Elliott #16749-028, Federal correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

- Matthew Hale #15177-424, Federal correctional Institution Cumberland, -CMU-, P.O. Box 1000, Cumberland, MD. 21501

- George Yarbrough #76861-379, Federal correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

- Mohammad Salameh #34338-054, Federal correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

- Matthew Dowell #22131-041, Federal correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

— Reginald Falice #13754-058, Federal Correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

— Jonathan Edwards #06197-479, Federal Correctional Institution Cumberland -CMU-, P.O. Box 1000, Cumberland, MD. 21501

— Approximately 150,000 BoP inmates, all of whom are identically situated as the above named members in this matter.

6.) Plaintiff's request for class certification is appropriate because:

— Fed. R. Civ. P. 23 (a), requires that, 1. The class is so numerous that joinder of all members is impracticable; 2. There are questions of law or fact common to the class; 3. The claims of the representative parties are typical of the claims of the class; and 4. the representative parties will fairly and adequately protect the intrests of the class.

Plaintiff's claims have satisfied every prerequisite listed above, in that:

— Plaintiff's claims, construed liberally, and taken as true, involve approximately 150,000 inmates, all of whom are similarly situated. Even if, only 0.1% of the 150,000 inmates were to be effected by these claims, that is still 150 class members, which would certainly render joinder of all members as impracticable.

— Every claim contained in this complaint raises a question of law or fact that is specific to this class and its members.

- All claims in this complaint identically, or similarly effect each named member of this class.

- Both named Plaintiff's of this complaint are capable and willing to ensure that this matter is litigated fairly and adequately, and will protect the intrests of the class, as the intrests of the Plaintiffs are one and the same as the members of the class.

7.) Additionally, denial of class certification in this matter would, in Plaintiff's respectful opinion, be improper, as it would subject all potential 150,000 class members, all of whom reside in dozens of different districts, to inconsistent and varying adjudications from different courts, which would certainly not be in the intrests of the class as a whole.

8.) Furthermore, the questions of law and fact raised in this complaint predominate over any questions affecting only individual members, and class certification is superior to individual suits, as each member of the class has, and will, continue to be deprived of their constitutional rights, and liberty interests until a definitive ruling is made in this matter.

9.) "In exercising its discretion, district courts should construe FRCP 23 liberally, and resolve all doubts in favor of class certification." Schreiber V. NCAA, 167 F.R.D. 169, 1996 U.S. Dist. LEXIS 8367 (D. Kan. 1996); Law V. NCAA, 167 F.R.D. 178, 1996-2 Trade Cas. (CCH) 71517, 1996 U.S. Dist. LEXIS 8461 (D. Kan. 1996).

10.) "Because courts are given discretion to tailor scope of class later in litigation, liberal consideration of

requirements for class certification is permitted in early stages of litigation." Weigmann v. Glorious Food, 169 F.R.D. 280, 72 Fair Empl. Prac. Cas. (BNA) 1078, 36 Fed. R. Serv. 3d (Callaghan) 1275, 1996 U.S. Dist. LEXIS 16509 (S.D.N.Y. 1996).

11) "Court is not limited to merely considering number of potential class members, but may make common sense assumptions that support finding of numerosity." Gaspar v. Linvatec Corp., 167 F.R.D. 51, 1996 U.S. Dist. LEXIS 7017 (N.D. Ill. 1996).

## Claim One

Defendants 1-5 are violating Plaintiff's, and all class members 1st Amendment right to petition the courts for a redress of grievances.

12) Under 42 U.S.C. §1997e(a), The Prison Litigation Reform Act -"PLRA"-, requires "proper" exhaustion of all "available" remedies.

13) In Ross v. Blake, 578 U.S. 1174, 136 S. Ct. 1850, 1859 (2016), the Supreme Court held that, remedies are unavailable "when prison administrators' thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.... [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, 1997e(a) poses no bar" - Ross, 136 S. Ct. at 1860

14) According to Merriam Webster dictionary, the definition of "Machination" is, "a scheming or crafty action or artful design intended to accomplish some usually evil end."

15.) The current manner in which the BoP's "Administrative Remedy Program" is being implemented and operated is, by design, a Machination, in that:

28 C.F.R. § 542.11, and BoP Program statement number 1330.18 State, "Responsibility", "a. The Community Corrections Manager (CCM), warden, Regional Director, and General Counsel are responsible for the <u>Implementation and operation</u> of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and central office levels".

The common sense reading of the above regulation implies that, the BoP is responsible for the implementation and operation of the Administrative Remedy Program. "It is a rational assumption" that the BoP is also responsible for any costs that are associated with the operation of their Program, given the clear fact that the "Responsibility to implement and <u>operate</u>" the Program rests solely with it.

16.) The BoP is effectivley charging every inmate in the BoP to use the Administrative Remedy Program, by shifting their "Responsibility" to "operate" the Program onto the inmate, by:

— Inmates are required to pay for the postage to mail their remedies to the various levels within the Program, ie; region, central office, despite the remedies already being scanned into the Bureau's system and readily available to them.

— Inmates are required to pay for the cost of making multiple copies of each remedy that they submit, as well as copies of any attachment or exhibit that they submit with their remedies, or their remedies will be rejected, despite every remedy, attachment, and exhibit being uploaded to the Bureau's

"Sentry" system and being readily available to all Bureau officials involved in the Process.

- Inmates are required to pay for the large envelopes that are needed to mail the remedies to each level of the remedy process, ie; regional, and central office.

- Since all remedies are sent by mail, and the BoP refuses to honor the "Prison Mailbox rule", nearly EVERY remedy that inmates mail gets rejected as "untimely", and is mailed back to the inmate to have an "untimely excusal memo" attached to it indicating that the untimeliness was of no fault of the inmates, and that the remedy should be permitted to proceed. Then, the inmate must, once again, pay to have the same remedy mailed back to continue the process. This single roadblock can continue to happen up to 4 times throughout the course of exhausting just one remedy, depending on how long Bureau officials hold the remedy responses before giving them to you to continue the process.

17.) Additionally, since all remedies are sent and received by mail, and the fact that mail and remedies are consistantly mishandled, lost, or delayed, an inmate can expect to pay up to $15.00 to $20.00 just to exhaust one remedy, assuming that the inmate can even make it that far.

18.) The Bureau's willful machinations have taken what should be, a simple, effective, and effeciant program, and turned it into a machine that, by design, is nearly impossible for the inmate to operate, let alone complete, without being forced to pay up to $20.00, just to satisfy the prerequisite of exhaustion just to be able to get to court, where then, the inmate must pay another $405.00 to have his case heard. The Bureau, by choice and design, has rendered its own remedy program

unavailable to mass numbers of Inmates who are just simply not willing to "Pay to Play" in order to seek redress of their grievances.

19.) The BoP's Administrative Remedy Program is, by design, made to impede, frustrate, and hinder an Inmates ability to satisfy the Prerequisit of Exhaustion, so that an Inmate can petition a court for a redress of a grievance. For example, the BoP imposes outrageous deadlines for Inmates to have their remedies <u>received</u> at the next proper level; these deadlines include the days that it takes for the BoP's remedy to reach the Inmates Institution, then however many days it sits in the Institution before officials give it to the Inmate, plus the time it takes for the Inmate to prepair the subsequent remedy appeal, then send it to the next level of the appeal chain. Most times that an Inmate <u>receives</u> a remedy response, they only have up to a week to prepair a response and get it submitted to the next level. or, face the remedy being rejected as untimely, and then starting the process all over again. Worse yet, the BoP consistantly rejects remedies as being untimely and demands that the Inmate resubmit the remedy again with a "late memo" from officials stating that the untimellness was of no fault of the Inmates, but yet, the BoP refuses to honor the "Prison Mailbox rule", which is completely arbitrary and capricous.

20.) Based on the current manner in which the remedy program is being operated, one can only conclude that it is designed to discourage Inmates of ordinary firmness from being willing to use it, which, directly impedes every Inmate in the BoP's ability, and right, to unimpeded access to the courts, all of which are direct violations of the 1st Amendment.

21.) This claim raises an unprecedented question of exceptional importance in that, is the BoP's Administrative Remedy

Pg. 18

Program, in its current form, being used to hinder, impede, and frustrate an inmates ability to exhaust, so that they can access the courts? Plaintiff's and class members believe that the answer is yes, and offer a common-sense solution to the undeniable Problem, to wit:

22) Transform the entire remedy Program into electronic format. Or, at minimum just simply scan, fax, or e-mail all remedies and responses to the appropriate receipiant.

23) Since the BoP undoubtably maintains the sole responsibility to implement and operate its own remedy Program, it is unreasonable and unconstitutional to shift the cost of that operation onto the inmate population. Plaintiff's can certainly forsee the Defendants claiming that if they alone had to foot the entire expense of operating their own Program, that it would be too costly, but the sword cuts both ways. If the cost of operation would be too expensive for the United States Government, then one has to assume that it would only be more costly and burdensom when that burden is shifted onto the shoulders of incarcerated individuals and their loved ones who support them during their incarceration.

24) This is a common sense problem with a common sense solution. Go electronic, eliminate postage expenses on both sides, never have remedies rejected as untimely again, never have remedies "lost" or, delayed again. Only a prison administration who desires for their remedy Program to be a machination by design could object to such a solution

## Claim Two

Defendants 1-5 are violating Plaintiff's, and all class members

5th Amendment due Process right to unencumbered access to the courts.

25) Paragraphs 12-24 are incorporated herein by reference.

26) It is well settled that Prisoners have a constitutional right of access to the courts, and that Regulations or Practices that impede such access are invalid.

27) The BoP's Administrative Remedy Program, in its current form, is a direct impediment of inmates access to the courts for all reasons listed in Paragraphs 12-24.

## Claim Three

Defendants 1-5 are violating Plaintiff's, and all class members 1st Amendment Right to Petition the courts for a redress of grievances

28) This claim is specific to both named Plaintiffs, and all named, and unnamed class members that are being housed in the "CMU" - Communications Management Unit - at F.C.I. Cumberland, MD., or any other CMU in the United States.

29) 28 C.F.R §540.2 (c) defines, in part, "Special Mail" as being any mail sent to, or received from, any Court, U.S. Attorney's Office, President, Vice President, Department of Justice, Etc. Accordingly, all such mail is afforded "Special Mail" treatment, meaning the incoming mail is only opened in the Inmates Presence, and any outgoing Special Mail is sealed by the Inmate in the Presence of BoP staff after it is checked for contraband.  No Special Mail is ever read, copied, forwarded, or otherwise opened outside of the Inmates Presence.

30) Defendants 1-5 have promulgated regulations and policies that are exclusive to inmates that are housed in CMU's that blatantly violate a protected liberty intrest by disallowing courts, Judges, law offices, United States Representatives, and United States Senators from special mail handling rights without any legitimate Penological intrest being asserted.

31) Defendants 1-5 have continued to enforce these unconstitutional regulations and policies even after having been notified through the grievance system that, not only are the regulations and policies unconstitutional, but they plainly conflict with other standing policies and regulations and that the BoP is abusing its discretion to the detriment of the inmates, which is resulting in unreasonable and blatantly unconstitutional restrictions.

32) There is no remotely rational, let alone legitimate Penological intrest in depriving the Plaintiff's and class members of their 1st Amendment right to special mail treatment in communicating with Courts, Judges, law offices, U.S. Representatives, and U.S. Senators. There is absolutely no security intrest, nor Penological reason to peruse mail sent to, or received from these offices.

33) Multiple courts have repeatedly struck down this exact issue in favor of the Prisoner. See:

Finney V. Hutto, - Exhibit 18 -
Blaine Sallier V. Deborah Brooks and Christine Ramsey - Exhibit 19 -
Ronald C. Jones V. M. Brown - Exhibit 20 -, upheld by Supreme Court

34) Defendants arbitrary treatment of legal/special mail as general correspondence is, and will continue to have devistating effects on inmates abilities to Petition the

courts for a redress of their grievances In that,

- All mail sent to or from courts, Judges, U.S. Attorney's, etc. Is read, copied, scanned, forwarded, and held by BoP officials for as long as necessary until It is "approved" to be mailed.

- If Inmates are seeking to file a suit against the BoP, this gives rise to an actual conflict of Intrest In that, the very people that the Inmate Is sueing, —BoP— have full unfettered access and control over holding, delaying, tampering with, or otherwise denying an Inmates mail to the courts, U.S. Attorney's, etc. for any reason or, no reason at all.

- This practice also results In Inmates consistantly missing Important deadlines to file required court documents, as the BoP can take as long as necessary to process, read, and approve court mail that they have no business Interfering with In the first place.

35) For all of the above reasons, the BoP's current treatment of "Special/legal mail" as general correspondence is depriving all class members of their 1st Amendment right of unimpeded access to the courts, and as such, the policy and regulation must be struck down.

### Claim Four

Defendants 1-5 are violating Plaintiff's, and all class members 5th Amendment due process right of access to the courts.

36) This claim is specific to both named Plaintiffs, as well as all named and unnamed class members that are housed In "CMUS".

37) Paragraphs 29-34 are Incorporated herein by reference.

38) The BoP's treatment of special/legal mail as general correspondence is causing all class members to miss important deadlines in their criminal post conviction matters, ie: Direct appeals, 2255's, ETC., as well as frustrating their ability to raise various non-frivolous matters in court.

39) The BoP's above mentioned policy is causing ongoing violations of every inmates right to due process, and will continue to do so until said policy is struck down.

## Claim Five

Defendants 1-5 are violating Plaintiff's, and all class members 1st Amendment rights to free speech, familial association, and right to petition the courts for a redress of a grievance.

40) This claim applies to both named Plaintiff's, as well as all class members and every inmate held within the BoP.

41) The entire BoP has implemented a "prior-approval" requirement of all contacts that a prisoner wishes to communicate with. This requirement demands that every prisoner in the BoP enter the name, address, and phone number of any contact that the inmate wishes to communicate with prior to being able to communicate with them.

42) After the inmate submits a request seeking approval of a contact, the inmate must wait until the contact is approved by officials before the inmate can communicate with the contact in any manner. This "approval" wait time can last from one day to months, and in some instances, contacts remain "Pending" indeffenitley.

43) The "Prior-approval" requirement applies to every contact that an Inmate enters, to include, courts, Attorneys, U.S. Attorneys, U.S. Senators, U.S. representatives, law offices, Etc.

44) The "Prior-approval" requirement of contacts has been struck down by multiple courts and ruled to be an unconstitutional violation of the 1st Amendment. See:

- Guajardo V. Estell - Exhibit 21 - upheld by supreme court -

- Finney V. Hutto - Exhibit 22 -

- Sebastian Intersimone V. Norman Carlson - Exhibit 23 -

45) While a legitimate penological interest exists in assuring that Inmates do not jeopardize the safety and security of Institutions, the requirement of contact Pre-approval has no bearing on the Bureau's ability to monitor any and all incoming or outgoing communications and is greater than reasonably necessary to obtain the objective of safety and security of Institutions.

46) Contact Pre-approval is an entirely arbitrary and capricious obstacle. Regardless of who an Inmate contacts or is contacted by, the BoP monitors all communications and can therefore intervene in any security matters that may arise of such communications. Contact Pre-approval serves no legitimate purpose in enhancing monitoring nor does it further any legitimate penological intrest.

47) Any penological intrest can be obtained by the standard monitoring of all incoming and outgoing communications or, at most, a "negative mailing list", where contacts that the BoP has pre-determined pose a threat to the safety and security are "Pre-blocked", rather than requiring

literally every single contact to be Pre-approved.

48) For all of these reasons, this policy should be struck down as a clear 1st Amendment violation of free speech, familial association, and access to petition the courts for a redress of a grievance.

### Claim Six

Defendants 1-5 are violating Plaintiffs, and all class members 5th Amendment due process rights to access to the courts.

49) This claim applies to both named Plaintiffs, as well as all class members and every inmate in the BoP.

50) Paragraphs 41-47 are incorporated herein by reference.

51) Prisoners have a constitutional right of access to the courts. The pre-approval contact requirement impedes that right in that:

— All contact requests, including courts, attorneys, Government offices, Pardon Attorneys office, U.S. Attorney's offices, can remain pending approval for days to months, and in some instances remain pending indefinitely. This creates a direct impediment, delay, and in many cases, a denial of access to the courts, attorneys, and government offices, all of which result in deadlines being missed, non-frivolous claims being blocked from review, and prisoners being subjected to longer time in prison because they missed deadlines while waiting for contact approval, or just simply couldn't obtain approval of the proper offices needed to obtain their freedom such as the office of the Pardon attorney.

52) For all of the above reasons the Pre-approval requirement of contacts is a 5th Amendment due Process violation that should be struck down.

## Request For Relief

A) That this court order the Defendants to Pay for the total cost of operating the Administrative Remedy Program, to include: Postage, envelopes, copies, and any other expense associated with the cost of operating the Program.

B) That this court order the Defendants to Implement a Paperless Administrative Remedy Program, which does not in any manner require the Inmates to directly or, Indirectly Pay to utilize.

C) That this court order the Defendants to reimburse all effected Plaintiffs and class members any expenses that they incurred as a result of having to pay to utilize the ARP.

D) That this court issue a declaration that the acts and omissions of the Defendants contained in Claims one and two Violate the 1st and 5th Amendment rights of the class.

E) That this court order the Defendants to treat all of the Persons, offices, and agencies listed in 28 C.F.R. §540.2 (c) as special mail, Bureau wide, Including in all CMUS.

F) That this court order the Defendants to Promulgate regulations and Program Statements in accordance with the declaratory relief ordered by this court, and that all such Promulgations strictly adhere to the Constitution of the United States.

G) That this court issue a declaration that the acts and omissions of the Defendants contained in Claims three and four Violate the 1st and 5th Amendment rights of the class.

Pg. 26

H.) That this court order the Defendants to terminate its use of the contact Pre-approval requirement at all BoP Institutions.

I.) That this court order the Defendants to Promulgate regulations and program statements that do not include contact Pre-approval requirements.

J.) That this court Issue a declaration that the acts and omissions of the Defendants contained in claims five and six violate the 1st and 5th Amendment rights of the class.

K.) That this court order the Defendants to reimburse Plaintiff Robert M. Elliott the $405.00 filing fee for this complaint, as well as any costs, fees, or expenses incured by Plaintiffs, and appointed class counsel throughout the litigation of this complaint.

L.) Any further relief that this court deems appropriate.

Respectfully Submitted

Date: 8-14-25

Robert M. Elliott
Robert M. Elliott #16749-028

Ryan K. Taylor   # 20301-035

Federal Correctional Institution Cumberland -CMU-
P.O. Box 1000
Cumberland, MD. 21501

Plaintiff's hereby certify that this 26 Page complaint with Exhibits 1-23, 59 Pages total, was hand submitted to be mailed on 8-19-25