**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROBERT M. ELLIOTT, *et al.*,** | * | |
| **Plaintiffs,** | * | **Civ. No. DLB-25-2812** |
| **v.** | * | |
| **FEDERAL BUREAU OF PRISONS, *et al.*,** | * | |
| **Defendants.** | * | |

**MEMORANDUM OPINION**

Robert M. Elliott and Ryan K. Taylor, who are representing themselves, filed this civil rights action pursuant to 42 U.S.C. § 1983 against the Federal Bureau of Prisons ("BOP"); the Department of Justice; William Marshal, Director of the BOP; Christopher Gomez, BOP Regional Director for Mid-Atlantic Region; and Melissa J. Bayless, in their official capacities.[1] ECF 1, 1-1. Elliott and Taylor claim BOP policies governing inmate communications with the outside world and prison grievance procedures violate their constitutional rights of access to the courts. *Id.* They seek injunctive and declaratory relief and compensatory damages. ECF 1-1, at 19–20.

The defendants moved to dismiss the complaint. ECF 22. The Court informed Elliott and Taylor that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), their failure to file a response in opposition to the defendants' motion could result in dismissal of the complaint. ECF 25, 26. Elliott responded to the motion, purporting to do so on behalf of Taylor as well.[2] ECF 38.

[1] Counsel for the defendants has advised the Court that Mistelle Star is the current Regional Director for the Mid-Atlantic Region. ECF 22, at 1. Pursuant to Fed. R. Civ. P. 25(d), the Clerk shall revise the caption to substitute Starr for Gomez.

[2] Because Elliott and Taylor are proceeding without counsel, each of them must sign every document they file. They may not sign documents on behalf of the other. They may sign the same filing, or each may sign a separate copy of the filing. *See* Fed. R. Civ. P. 11(a); Local Rule 102(a)(ii). Documents that Elliott filed without Taylor's signature cannot be attributed to Taylor.

Taylor has not filed a response to the motion. The defendants filed a reply. ECF 42. Elliott has filed motions for notice of electronic filing, return of property, and a status update. ECF 33, 39, 46. In addition, BOP inmates Robert K. Decker and Mohammad Salameh filed motions seeking to join this action as plaintiffs. ECF 31, 44. The defendants have not responded to these motions. No hearing is necessary for the Court to rule on the pending motions. *See* Loc. R. 105.6 (D. Md. 2025).

For the following reasons, the defendants' motion to dismiss is granted. Elliott's motions for notice of electronic filing and for return of his property are denied. His motion for a status update is moot, in light of this memorandum opinion. Decker's and Salameh's motions seeking to join this action as plaintiffs are denied. Elliott and Taylor may file an amended complaint. Taylor must update his address with the Court.

## I. Procedural and Factual Background

Elliott and Taylor filed this case as a purported class action, along with a motion to certify the class and a motion to appoint counsel. ECF 1, at 4; ECF 2 & 4. The Court denied the motions without prejudice to renewal if their claims survive the motion to dismiss. ECF 35. Unless the purported class is represented by counsel, this case cannot proceed as a class action. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). At this juncture, Elliott and Taylor do not have counsel, and they cannot pursue their individual claims on behalf of a class.

Elliott and Taylor claim the defendants are violating their rights to access the courts under the First and Fifth Amendments in several different ways. ECF 1. Only Elliott asserts Claims One and Two because only he exhausted his administrative remedies for those claims. ECF 1-1, at 4. Elliott and Taylor both bring Claims Three, Four, Five, and Six. ECF 1-1, at 5; ECF 38, at 1–4.

Elliott alleges that BOP's administrative remedy program impedes his access to the courts. He claims that requiring inmates to pay for postage, copying, and envelopes "effectively charg[es]"

them for engaging in the administrative remedy process. ECF 1-1, at 9. He also alleges that requiring inmates to mail requests for administrative remedies causes their requests to "get[] rejected as 'untimely'" and increases the costs. *Id.* at 10. Elliott claims the administrative remedy program violates his rights to access the courts under the First Amendment (Claim One) and the Fifth Amendment (Claim Two). *Id.* at 8–13.[3]

Elliott and Taylor claim that the defendants are violating their rights to access the courts under the First Amendment (Claim Three) and the Fifth Amendment (Claim Four) by not providing "special mail" treatment for all their legal mail, which, in turn, causes them to miss court deadlines. *Id.* at 13–16. They explain that incoming mail designated "special mail" is opened in the inmate's presence, and outgoing mail designated "special mail" is sealed by the inmate in the presence of BOP staff after being checked for contraband. *Id.* at 13. Further, "special mail" is never read, copied, forwarded, or otherwise viewed outside the inmate's presence. *Id.* Elliott and Taylor say their legal mail, which is not being treated as "special mail," includes correspondence to and from courts, judges, the U.S. Attorney's Office, law offices, the President, the Vice President, the Department of Justice, and U.S. Senators and Representatives. *Id.* at 14–15.

[3] Elliott's challenge to the administrative grievance procedures cannot be understood without mentioning the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Under this requirement, an inmate must use "all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 91 (citation modified). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

Elliott and Taylor also claim that the defendants are violating their First Amendment rights to free speech, to familial association, and to petition the courts (Claim Five) and their Fifth Amendment due process right to access the courts (Claim Six) by requiring prior approval of the individuals with whom they want to communicate. *Id.* at 16–19.

Elliott and Taylor filed this action when they were both housed in the Communications Management Unit ("CMU") at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). ECF 1, 1-1. On February 2, 2026, the Court received notice from Taylor that he had been transferred to the Kalamazoo Probation and Enhancement Program in Kalamazoo, Michigan and that his mail should be sent to that location. ECF 28. The BOP website currently indicates that Taylor is under the supervision of the Residential Reentry Management (RRM) Detroit field office.[4] Taylor has not provided an updated address to the Court. Pursuant to this Court's Local Rules, all parties have an affirmative duty to inform the Court of any change of address during the pendency of their cases. *See* Loc. R. 102.1(b)(iii). Taylor must provide a current mailing address.

**II. Standard of Review**

The defendants move to dismiss the complaint for failure to state a claim. Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the plaintiff must have pleaded facts demonstrating he has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely

[4] *See* https://www.bop.gov/inmateloc/ (last checked Sept. 30, 2026).

conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (citation modified).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation modified). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (citation modified). On a Rule 12(b)(6) motion, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citation modified).

Elliott and Taylor do not have counsel. "[P]ro se filings are held to less stringent standards than formal pleadings drafted by lawyers." *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (citation modified). Accordingly, the Court must construe their pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the Court] to attempt to discern the unexpressed intent of the plaintiff"; the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation modified). Thus, a pro se complaint "still must contain enough facts to state a

claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (citation modified).

## III. Discussion

### A. Access to the Courts

Elliott and Taylor assert violations of their rights of access to the courts under the First and Fifth Amendments.

Prisoners have a constitutionally protected right of access to the courts pursuant to which they must be afforded a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 350, 356 (1996) (considering access to the courts claims under the First, Sixth, and Fourteenth Amendments); *see Plyler v. Moore*, 100 F.3d 365, 373 (4th Cir. 1996) (considering access to the courts claim under Due Process Clause of the Fifth Amendment). This right "guarantees . . . the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts," not a "particular methodology" for bringing claims. *Lewis*, 518 U.S. at 355–56. To state a claim for denial of access to the courts, a plaintiff must allege "'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 351, 356); *see also Lewis*, 518 U.S. at 351–52 (identifying "actual injury" requirement). That is, the plaintiff must allege that the defendants "frustrated or . . . impeded" a "nonfrivolous legal claim." *Lewis*, 518 U.S. at 353, 356. And the plaintiff "must . . . identify an actual injury resulting from [that] official conduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *see also Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015) (noting "a prisoner must demonstrate

that he suffered an actual injury, such as missing a court-imposed deadline or being unable to file a complaint because of the Defendants' actions").[5]

The right of access "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* The description of the predicate claim must be sufficient to allow an assessment of whether it was "nonfrivolous" or "arguable." *Id.*

Elliott and Taylor allege that their constitutional rights to access to the courts are impeded by the prison's cumbersome administrative remedy and grievance procedures; by the prison's refusal to treat their legal mail as "special mail"; and by the prison policy requiring prior approval of communications with anyone outside the prison. While Elliott and Taylor attempt to challenge these prison policies, they do not "identify an actual injury resulting from" these policies. *See Cochran*, 73 F.3d at 1317. They do not cite to an "anticipated or lost" claim or cause of action that

[5] In *Lewis*, the Supreme Court required actual injury for access to the courts claims without distinguishing between such claims brought under the First, Sixth, and Fourteenth Amendments. In *Strickler v. Waters*, the Fourth Circuit affirmed summary judgment for the defendant in part because the plaintiff had not alleged actual injury, but the court did not identify the constitutional amendment that gave rise to the right of access to the courts. 989 F.2d 1375, 1383 & n.10 (4th Cir. 1993). In any event, whether Elliott and Taylor's access to the courts claims are asserted under the First or Fifth Amendments, they must allege an actual injury for each alleged violation. *See Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."); *see also Webb v. Buffaloe*, No. 5:22-CT-3192-FL, 2022 WL 17978791, at *3 (E.D.N.C. Dec. 28, 2022) (citing *Lewis* and *Christopher* and considering whether plaintiff alleged actual injury for access to the courts claims under the First and Fourteenth Amendments).

the policies have frustrated. *See Christopher*, 536 U.S. at 415. Without a frustrated underlying claim, Elliott and Taylor "cannot have suffered injury" because they have not been "shut out of court." *See id.* What's more, the description of the predicate claim must be sufficient to allow an assessment of whether it was "nonfrivolous" or "arguable." *Id.* Here, the Court cannot assess whether any predicate claims are nonfrivolous or arguable because Elliott and Taylor do not describe any predicate claims at all (with one exception discussed below).

Taylor identifies one potential injury caused by the prison policy requiring prior approval before he may communicate with anyone outside the prison. In an August 10, 2025 declaration attached as an exhibit to the complaint, Taylor states that he requested prison approval to contact the Office of the Pardon Attorney of the Department of Justice and that, as of that date, his request had been pending BOP approval for "nearly a year" and "remain[ed] pending indefinitely." ECF 1-12, at 1. In Elliott's opposition to the motion to dismiss, Elliott argues that this delay "prevented [Taylor] from petitioning the office for clemency and thereby, conceivably, prolonged his term of imprisonment for no legitimate reason." ECF 38, at 16. But those allegations in Elliott's opposition are not in the complaint, and Elliott cannot amend the complaint through his opposition briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Nor can Elliott defend Taylor's claims; he is not Taylor's lawyer. *See* Loc. R. 101.1(a). Focusing on Taylor's allegations in the complaint, Taylor does not allege why he wanted to contact the Pardon Attorney and what his request would have been if permission had been granted. Without any specific allegations about Taylor's "predicate claim," the Court cannot discern whether it would have been nonfrivolous or arguable.[6]

[6] The defendants argue that Taylor failed to exhaust his administrative remedies as to this claim because his "passing reference to the BOP's contact approval process . . . is legally insufficient to exhaust the claim." ECF 22-1, at 24. They cite caselaw holding that "an inmate must file grievances

Elliott and Taylor have not plausibly stated claims for violations of their rights to access to the courts under the First or Fifth Amendment.

**B. First Amendment Free Speech and Familial Association Claims**

Elliott and Taylor allege that the BOP's outside contact approval process and requirements violate their First Amendment rights to free speech and familial association.

"The First Amendment precludes the government from 'abridging the freedom of speech.'" *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 102 (4th Cir. 2026) (citation modified) (quoting U.S. Const. amend. I). This means that "generally, the government may not regulate speech based on its substantive content or the message it conveys." *Id.* at 102–03 (citation modified).

The Constitution also "protects certain kinds of highly personal relationships" such as "certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citation modified). This right "is constitutionally protected by the Due Process Clause [and] may also, to some degree, be protected by the freedom of association found in the First Amendment." *Desper v. Clarke*, 1 F.4th 236, 243 (4th Cir. 2021) (citation modified). This "freedom of association is among the rights least compatible with incarceration," and "[s]ome

---

with sufficient details to alert prison officials of the possible constitutional claims which are now alleged as the basis for relief." *Id.* (quoting *Williams v. Ms. BAYS*, No. 7:07cv00292, 2007 WL 4561295 (W.D. Va. Dec. 20, 2007) (unpublished), *aff'd sub nom. Williams v. Braxton*, 275 F. App'x 261 (4th Cir. 2008) (unpublished) (per curiam)). In his February 21, 2025 administrative remedy appeal that the defendants attached to their opposition, Taylor asserts that "Pre-approval of contacts and what constitutes 'special mail' has been ruled on by several US courts. . . . It has been held that these requirements are Unconstitutional." ECF 22-2, at 32. This language, albeit sparse, sufficiently alerted prison officials that Taylor believed requiring prior approval for outside contacts was unconstitutional. In response, Elliott insists Taylor exhausted his remedies for this claim, ECF 38, at 3–4. And in their reply, the defendants addressed only Elliott's exhaustion of remedies. The Court is satisfied that Taylor exhausted his remedies as to this claim.

curtailment of that freedom must be expected in the prison context." *Overton*, 539 U.S. at 131. When a prison regulation or policy "impinges on inmates' constitutional rights, the regulation [or policy] is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Elliott and Taylor complain generally about delays in approving requests to have contact with anyone outside the prison, "to include, courts, attorneys, U.S. Attorneys, U.S. Senators, U.S. representatives, law offices, etc." ECF 1-1, at 17. But they do not allege that they have requested contact with anyone in their families, and they do not cite any specific instances when any of their requests for family contacts have been delayed or denied. As for their free speech claims, Elliott and Taylor do not allege that BOP regulates the "substantive content" of their communications. *See Nat'l Ass'n of Diversity Officers*, 167 F.4th at 102–03.

Elliott and Taylor have failed to allege violations of their First Amendment rights of free speech and familial association.[7]

## IV. Amended Complaint

Elliott and Taylor have failed to state claims upon which relief can be granted. In his response to the motion to dismiss, Elliott requested permission to amend the complaint "to change all 1st Amendment access to the court claims in the complaint to 1st Amendment violations of free speech claims." ECF 38, at 12. Because their complaint includes potentially cognizable claims, they should have the opportunity to amend. *See Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir.

---

[7] The defendants assert that, because Taylor is no longer housed in the CMU, his claims for injunctive and declaratory relief regarding how mail is handled and the BOP's contact approval process are moot. The Court declines to address the mootness defense at this time. Elliott and Taylor may file an amended complaint consistent with the Court's findings, and the defendants may reassert their mootness and exhaustion arguments, as appropriate.

1978). In light of their status as pro se litigants, Elliott and Taylor are granted leave to file an amended complaint.

However, leave to file an amended complaint is subject to the following limitations. First, if Taylor does not provide a current address before or when he files an amended complaint, the Court will not accept his amended complaint. If Taylor does not wish to pursue his claims or if he does provide a current mailing address as directed, Elliott may file an amended complaint on behalf of himself.

If Elliott and Taylor file an amended complaint, they may not file a class action complaint unless they are represented by counsel. Each document they file jointly must be signed by both parties, or they may sign and file individual copies of the same document. *See* Fed. R. Civ. P. 11(a); Loc R. 102(a)(ii) (requiring the signature of each party appearing without counsel before the Clerk will accept documents for filing).

The plaintiffs also are advised that, if they want to proceed as co-plaintiffs, their claims must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all plaintiffs [must] arise in the action." Fed. R. Civ. P. 20(a)(1). If Elliott's and Taylor's claims do not meet this requirement, joinder may be deemed inappropriate.

Elliott and Taylor are granted 60 days to file a joint amended complaint consistent with this memorandum opinion and the accompanying order. The amended complaint must include necessary facts to support all claims brought and relief sought. The allegations should include more than general or conclusory statements and must include facts specific to Elliott and Taylor. The allegations also should include any harms Elliott and Taylor suffered as a result of the defendants' actions. Elliott and Taylor should be mindful of the PLRA exhaustion requirements when

preparing their amended complaint, *see* 42 U.S.C. § 1997e(a), and they should consider the defendants' argument that some of Taylor's claims are moot.

The amended complaint will replace the original complaint. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001). Therefore, the amended complaint must include all allegations against each defendant so that the amended complaint may stand alone as the sole complaint that the defendants must answer. Additionally, if the amended complaint does not meet the requirements in this memorandum opinion, it may be dismissed without prejudice for failure to comply.

## V. Other Motions

### A. Decker's and Salameh's Motions to Join

Decker and Salameh assume this case is proceeding as a class action and ask to be added as class representatives. This case is not currently a class action, and Decker and Salameh may not be added as class representative plaintiffs. Their motions are denied without prejudice to renewal if the purported class obtains counsel and the case proceeds as a class action. The Clerk shall remove Decker's and Salameh's names from the caption of this case.

### B. Elliott's Motion for Notice of Electronic Filing

Elliott asks for notification of electronic filings so that he can stay informed on case developments. ECF 33. Elliott explains that he does not know if his filings "ever make it to this Court." *Id.* at 1. Elliott may send periodic letters to the Clerk asking for a copy of the docket sheet, but the Court will not send Elliott notice each time an entry is made on the docket. *See* Standing Order 2018-05 in *In re Consent to Receive Electronic Notice*, Misc. No. 00-308 (D. Md. Oct. 12, 2018) (allowing for notice of electronic filings to be sent via email to "non-prisoner, self-represented parties"). The motion is denied.

### C. Elliott's Motion for Return of Property

Elliott asks the Court to order that documents taken from his cell by BOP staff be returned to him. ECF 39. He states that the confiscated property was "sworn declarations that he had received from inmate class members" and "exhibits from other class members" that he needs for this class action. *Id.* at 1. As noted, this case is not proceeding as a class action at this time. Therefore, the documents are not currently necessary to prosecute this case. The motion is denied. However, the defendants shall preserve the documents seized from the July 16, 2025 search of Elliott's cell in the event they are needed in the future for litigation purposes.

## VI. Conclusion

For the foregoing reasons, the defendants' motion to dismiss, ECF 22, is granted. Elliott and Taylor may file an amended complaint. Elliott's motions for notice of electronic filing and return of property, ECF 33, 39, are denied. The defendants are directed to preserve the documents described in Elliott's motion for return of property. Decker's and Salameh's motions seeking to join this action as class representative plaintiffs, ECF 31, 44, are denied. Elliott's motion for a status update, ECF 46, is denied as moot. Taylor must provide his current address if he wants to participate in this lawsuit. A separate order follows.

September 30, 2026
Date

Deborah L. Boardman
United States District Judge